# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **JEREMY LeBLANC,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Civil No. 06-197-P-H** |
| ) | |
| **SULLIVAN TIRE COMPANY, INC.,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants** ) | |

## DECISION AND ORDER ON MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

### Introduction

In this case, an employee challenges the method by which his short-term and long-term disability benefits were calculated under his employer's disability plan. I conclude that the plan language supports the benefit calculations.

### Factual and Procedural History[1]

The defendant Sullivan Tire Company, Inc. ("Sullivan Tire") maintains a welfare benefits plan ("Plan") providing various benefits for its employees. The Plan, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), has two sections.

---

[1] The parties refer to the Administrative Record as GLIC (Guardian Life Insurance Company), with a Bates page number. I do the same.

Section I is captioned: "Employer-Funded Benefits Not Insured by Guardian." That section deals with short-term disability benefits. It provides twice-monthly benefit payments (pro-rated for disabilities lasting only a portion of a week) for up to 13 weeks, GLIC-18-19. It calculates these benefits according to weekly earnings, GLIC-26, and is self-funded by Sullivan Tire. GLIC-9.

Section II is captioned: "Guardian Insurance." It deals with a variety of group insurance benefits—among them, long-term disability benefits. The long-term disability provisions of the Plan provide monthly benefit payments (after a 90-day waiting period), GLIC-64, calculated according to monthly earnings, GLIC-76. The defendant The Guardian Life Insurance Company of America ("Guardian Life") pays the long-term benefits, see, e.g., GLIC-38, as a result of insurance that Sullivan Tire buys from Guardian Life.

But Guardian Life is the Claims Fiduciary for both short-term and long-term benefits. It has "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." GLIC-31 (short-term benefits); GLIC-106 (long-term benefits). Although Guardian Life pays the long-term benefits, it explicitly bears no responsibility for payment of short-term benefits. GLIC-9.

Sullivan Tire employed the plaintiff Jeremy LeBlanc. As a result of a lumbar herniated disc, LeBlanc left work on November 29, 2005, and applied for short-term benefits. GLIC-456. Sullivan Tire paid LeBlanc short-term benefits for the maximum period the Plan allowed, 13 weeks. GLIC-344. On February 9, 2006, LeBlanc applied for long-term disability benefits. GLIC-213. On April 27, 2006,

2

Guardian Life awarded LeBlanc long-term benefits as of February 27, 2006, the end of the 90-day post-disability waiting period the Plan required. GLIC-286. The calculation of both short-term and long-term benefits was based on the amount of LeBlanc's earnings that Sullivan Tire reported to Guardian Life, namely $800 per week. GLIC-456, 481-82 (short-term benefits); GLIC-268-69 (long-term benefits).

While Guardian Life was processing LeBlanc's long-term benefit claim, LeBlanc began questioning the method used to calculate his benefits. Through his lawyer, LeBlanc sent letters to Sullivan Tire and Guardian Life requesting that they include his monthly position incentive ($1,000) and his monthly commission base ($500) in the disability benefit calculation.[2] GLIC-272 (letter to Guardian Life); GLIC-383 (letter to Sullivan Tire). LeBlanc also raised this issue directly with Wayne Funder, Human Resources staff at Sullivan Tire. On April 3, 2006, Funder sent Guardian Life a letter with two questions, the first of which is relevant here; its subject was LeBlanc's long-term disability benefits. In that regard, Funder provided a description of Sullivan Tire's "pay program," including compensation regularly paid to LeBlanc. GLIC-388. According to this letter, Sullivan Tire paid LeBlanc a "flat, weekly compensation" of $800. That is the amount on which Sullivan Tire paid premiums. Id. Funder reported to Guardian Life that LeBlanc also received a monthly payment of $1,000, a so-called "position

---

[2] In his filings, LeBlanc recharacterizes these payments. He alleges that Sullivan Tire paid him a $1,500 per month position incentive in addition to his base salary of $800 per week plus commissions on certain sales. Pl.'s Statement of Material Facts ("SMF") ¶ 2. Sullivan Tire reported a $1,000 per month position incentive. Def. Sullivan Tire's Response to Pl.'s SMF ¶ 2. The precise characterization and amount of the payment do not affect my analysis. Hereafter, I will refer only to
*(continued on next page)*

incentive" available to those working in an outside sales capacity (LeBlanc's case) or at a challenging location, so long as the employee continued working in that particular position or location. Id. Funder's letter explained that "outside salesmen may receive a commission based on sales volume and gross profit each month," but it did not provide a specific payment amount for LeBlanc. Id. Funder's letter reported that LeBlanc believed that his monthly position incentive "should be figured into his base pay with [long-term disability] benefits being paid on this basis." Id. Funder concluded by stating that he would "leave [the benefit] determination to [Guardian Life]," because Guardian Life has "final authority to make a decision concerning [long-term disability] coverage and compensation." Id.

Delondria Terry, a Guardian Life Benefit Analyst, responded to Funder's letter on April 11. She copied LeBlanc, but did not respond directly to the separate letter that LeBlanc's lawyer had sent. GLIC-361, GLIC-268. Terry's letter explained that her records showed that LeBlanc's base salary was $800 per week, the amount that Sullivan Tire reported and on which it paid premiums. GLIC-362. Her letter concluded that, "based on the contract guidelines," Guardian Life would calculate LeBlanc's long-term benefits according to that amount and would exclude his position incentive. Id. The April 27 letter to LeBlanc awarding him long-term benefits confirmed this interpretation; it explained that he would receive $2,080 per month, the benefit due a claimant with a weekly salary of $800. GLIC-286.

---

the position incentive.

4

On July 19, 2006, LeBlanc's lawyer sent Guardian Life a second letter, demanding that Guardian Life recalculate LeBlanc's short- and long-term disability benefits based on larger earnings, specifically including his $1,000 position incentive and $500 commission base. GLIC-270. On August 18, 2006, Terry responded with a letter nearly identical to the one that she sent to Wayne Funder in April, explaining Guardian Life's position that long-term benefits were based correctly on LeBlanc's $800 per week base salary. GLIC-268-69.

In October 2006, LeBlanc filed a lawsuit in state court against Sullivan Tire and Guardian Life asserting state law claims of various sorts. See Pl.'s Compl. (Docket Item 1-2). Guardian Life, with the consent of Sullivan Tire, removed the case to this court pursuant to 28 U.S.C. § 1441. Notice of Removal (Docket Item 1). On February 2, 2007, LeBlanc amended his complaint to state only federal claims under ERISA against both Sullivan Tire and Guardian Life. Pl.'s Am. Compl. ¶¶ 15-23 (Docket Item 11-3). Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question).

All three parties have filed dispositive motions. Sullivan Tire and LeBlanc characterize their filings as motions for summary judgment. Def. Sullivan Tire's Mot. for Summ. J. (Docket Item 22); Pl.'s Mot. for Summ. J. (Docket Item 21). Guardian Life calls its motion a motion for judgment on the administrative record. Def. Guardian Life's Mot. for J. on the Administrative R. (Docket Item 19).

LeBlanc has submitted evidence in addition to the Administrative Record, see Exs. 1-13 to Pl.'s Mot. for Summ. J. (Docket Items 21, 24-25), but I do not consider it.[3]

**STANDARD OF REVIEW**

Like the First Circuit, I do not pause to parse whether this is summary judgment, judgment on the administrative record, or some other category. See Orndorf, 404 F.3d at 517 ("[W]here review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue."); Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002). There are no material facts in dispute. The issue here is the proper interpretation of the Plan. The Supreme Court has made clear that if the issue is plan language interpretation and if the plan expressly gives the plan administrator discretion to interpret it, the administrative decision is reviewed only for arbitrariness and capriciousness. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Leahy, 315 F.3d at 15.

---

[3] With his motion for summary judgment, LeBlanc filed his affidavit (Pl.'s Ex. 3), copies of payroll records (Pl.'s Ex. 1), a memo regarding LeBlanc's pay program (Pl.'s Ex. 5), a summary of wages and payments (Pl.'s Ex. 6), and excerpts from the Sullivan Tire Group Insurance Plan (Pl.'s Exs. 8-13). His other exhibits (Pl.'s Exs. 2, 4, and 7) are copies of documents included in the Administrative Record. In Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519-20 (1st Cir. 2005), the First Circuit made clear that, in the usual benefit denial case, evidence outside the administrative record should be excluded regardless of the standard of review, except for narrow exceptions not pertinent here (e.g., claims of personal bias by a plan administrator, or prejudicial procedural irregularity in the ERISA administrative review procedure, *not* when the substance of the decision is being attacked). Orndorf declined to decide whether a court engaged in *de novo* review of a plan administrator's interpretation of plan language may consider evidence outside the administrative record to assist the court in interpreting the language. Id. at 518 ("[T]here is no occasion to consider the use of outside evidence to assist the court in interpreting plan language."). Since I do not engage in *de novo* review here (for the reasons explained in text), I need not resolve the question Orndorf left open. I limit my consideration to the administrative record.

### *(1) LeBlanc's Claims against Guardian Life*

In his Amended Complaint, LeBlanc asserts a single count against Guardian Life. He captions it: "ERISA CLAIM AGAINST GUARDIAN FOR LONG TERM DISABILITY BENEFITS." Under this heading, he asserts that Guardian Life "failed to pay Plaintiff benefits due under the disability policy." Pl.'s Am. Compl. ¶ 23.

### *(a) Long-Term Disability Benefits*

I review Guardian Life's long-term disability benefit determination under the arbitrary and capricious standard of review because the Plan expressly grants Guardian Life "discretionary authority to determine eligibility for benefits and to construe the terms of the plan." GLIC-106; Firestone Tire & Rubber, 489 U.S. at 115; Leahy, 315 F.3d at 15. LeBlanc offers two arguments in favor of a more searching standard of review, but neither comports with First Circuit precedent.

First, LeBlanc asserts that Guardian Life operates under a "structural conflict of interest," and that I should give less deference, therefore, to its decision denying him additional benefits. Mem. in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.) at 4 (Docket Item 26). When the same entity has discretion to determine a claimant's eligibility for benefits and then pays the claims it approves, there is an ostensible "conflict." See Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 30 (1st Cir. 2007). That appears to be Guardian Life's situation here. The Supreme Court has said that a conflict must be weighed in determining whether there is an abuse of discretion. Firestone, 489 U.S. at 115. LeBlanc concedes, however, that under First Circuit precedent, the mere "fact that . . . the plan administrator[] will have to pay [the] claim out of its own assets does not

7

change [the arbitrary and capricious] standard of review." Glista v. Unum Life Ins. Co. of America, 378 F.3d 113, 125-26 (1st Cir. 2004); Pl.'s Mem. at 4. According to the First Circuit, a conflict of interest sometimes "may warrant arbitrary and capricious review with 'more bite,'" but only where the claimant has shown that the benefits determination was improperly motivated. Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 90 (1st Cir. 2005) (quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)). Here there is no evidence of any improper motivation.[4] I therefore apply the conventional standard of review.

Second, LeBlanc makes an estoppel argument. He asks that the explicit language in the Plan granting discretionary authority to Guardian Life be ignored, claiming that it is only advisory because Guardian Life on its part allegedly failed to comply with certain other procedural requirements presented in the same section of the Plan. See Pl.'s Mem. at 3.[5] In support of this argument, LeBlanc cites Bard v. Boston Shipping Ass'n, a case in which the First Circuit determined that a plan administrator's egregious procedural violations sufficiently prejudiced the plaintiff that he was entitled to a remedy. 471 F.3d 229, 237 (1st Cir. 2006). But Bard does not support LeBlanc's position. Bard expressly declined to hold that numerous procedural failures there deprived the plan administrator's

---

[4] LeBlanc has presented no evidence of improper motivation in his additional submitted evidence.
[5] LeBlanc alleges that Guardian Life failed to provide "a description of the plan's claim review procedures and the time limits applicable to such procedures, including a statement indicating that the claimant has the right to bring a civil action under ERISA Section 502(a) following an adverse benefit determination." He claims that Guardian Life also did not identify or describe any specific internal rule, guideline or protocol upon which it relied in making the benefit determination, or a statement that a copy of such information would be provided upon request. Pl.'s Mem. at 3. LeBlanc demonstrates no prejudice from any such failures.

8

decision of the deference it otherwise deserved under Firestone. Id. at 230.[6] See also Krawczyk v. Harnischfeger Corp., 869 F. Supp. 613, 622 (E.D. Wis. 1994), aff'd 41 F.3d 276 (7th Cir. 1994).

Under the arbitrary and capricious standard of review, I must uphold Guardian Life's long-term benefit calculation "if the decision was reasoned and supported by substantial evidence," Denmark, 481 F.3d at 33, "plausible in light of the record as a whole." Leahy, 315 F.3d at 17. The "whole" record consists of the "evidence that was before the administrator when he made the decision being reviewed." Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 19 (1st Cir. 2003) (quoting Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)). Guardian Life's long-term benefit calculation meets those standards for the following reasons.

The long-term benefits section of the Plan defines "insured earnings" as, in relevant part, the employee's "rate of monthly earnings, excluding bonuses, commissions, expense accounts, and any other extra compensation, *as reported by the plan sponsor*." GLIC-76 (emphasis added). Sullivan Tire, the plan sponsor, reported $800 per week as LeBlanc's base pay, and paid long-term disability insurance premiums based on that amount. GLIC-388. Guardian Life's initial

---

[6] In Bard, the court prevented the plan administrator from using information that the employee submitted before he was informed of the plan administrator's interpretation of the plan. Because the plaintiff's reasonable interpretation of the plan language differed from the plan administrator's interpretation, and because the administrator failed to inform the plaintiff of its interpretation, the plaintiff did not initially present evidence that actually supported his claim for benefits. Bard, 471 F.3d at 237. Then the plan administrator discounted evidence that the plaintiff submitted later to show that he satisfied the Plan criteria because the later evidence allegedly conflicted with the earlier information. Id. at 242.

9

use of the earnings as reported was thus a reasoned decision supported by substantial evidence.

Even after considering LeBlanc's challenge and the additional earnings information that Sullivan Tire supplied, Guardian Life's final long-term benefit determination on April 27, 2006 adhering to the same calculation still was reasonable. The Plan's exclusion of "any other extra compensation" from the benefit calculation is ambiguous. On the one hand, LeBlanc's position incentive seems different from the three specifically enumerated compensation categories (bonuses, commissions, and expense accounts) because, unlike them, it is constant as long as it applies. On the other hand, it explicitly is not part of LeBlanc's base pay, and it is income that he would lose if he transferred positions within the company. GLIC-388. Thus, the language required Guardian Life to make an "evaluative determination" about whether a particular form of compensation qualifies as part of an employee's "insured earnings." See Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 838 (1st Cir. 1997). Upon receiving the April 3, 2006 letter from Sullivan Tire that conveyed LeBlanc's complaint and described his pay package, the Guardian Life Benefit Analyst handling LeBlanc's claim consulted her supervisor. See GLIC-345. After reviewing the Plan language, and in light of the fact that Sullivan Tire reported and paid premiums based on a weekly salary of $800, they concluded that "the amount that [they were] basing his LTD benefit on [was] correct," namely weekly earnings of $800. Id. In a formal letter responding to LeBlanc's inquiry, Guardian Life explained that "based on the contract guidelines, [LeBlanc's long-term disability] benefit will be calculated

10

based on his weekly base salary of $800.00." GLIC-362. Although reasonable minds might differ on the proper interpretation of this provision of the Plan, the Guardian Life decision was reasonable and supported by substantial evidence.

### *(b) Short-Term Disability Benefits*

The Amended Complaint makes no claim against Guardian Life for short-term benefits. But LeBlanc attempts to raise one in his response to Guardian Life's motion for judgment on the administrative record. See Pl.'s Opp'n to Guardian Life at 1 (Docket Item 27). There, he asserts that Guardian Life is responsible for underpayment of his benefits under the short-term disability plan. Id. This argument fails for two reasons. First, LeBlanc identifies no language in the Amended Complaint that makes such a claim against Guardian Life, and he has not requested permission to amend his complaint to add such a claim.

Second, the Plan is clear that only Sullivan Tire bears responsibility for making short-term benefit payments. See GLIC-9. Section 1132(a)(1)(B) permits a plaintiff to recover only "benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Because this plan vests in Sullivan Tire "sole responsibility and liability for payment of [short-term disability] benefits," Guardian Life lacks the authority to provide the remedy that section 1132(a)(1)(B) authorizes: benefits due under the Plan. See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 101 (1st Cir. 2007) ("[The plaintiff's] claim for benefits is plainly not a suit for benefits *under the terms of the plan.* Instead, she expressly seeks benefits *not* authorized by the plan's terms.").

I conclude that Guardian Life is entitled to judgment on LeBlanc's claims.

11

### *(2) LeBlanc's Claims against Sullivan Tire*

LeBlanc makes two claims against his employer, Sullivan Tire: (1) failing to pay the benefits due him under the short-term disability plan, Am. Compl. ¶ 17; (2) failing to purchase the long-term disability plan that the Plan describes or failing to report to Guardian Life the correct amount of LeBlanc's insured earnings. Id. ¶¶ 20-21. I treat them in reverse order, and conclude that LeBlanc's claim fails for both.

### *(a) Long-Term Disability Benefits*

LeBlanc's claim against Sullivan Tire for long-term benefits is that:

> Failure by Sullivan [Tire] either to purchase the described long term disability plan or to properly report Plaintiff's insured earnings has caused and continues to cause loss to Plaintiff of benefits under the terms of the long term disability policy.

Pl.'s Am. Compl. ¶ 21; Pl.'s Mem. at 7. I do not decide whether Sullivan Tire improperly reported LeBlanc's earnings as $800 per week or failed to purchase the correct long-term disability benefit coverage because, as to long-term benefits, ERISA does not offer LeBlanc a remedy against Sullivan Tire.

First, for relief under 29 U.S.C. § 1132(a)(1)(B), the proper defendant for a denial of benefits claim is "the party that controls administration of the plan." Terry v. Bayer Corp., 145 F.3d 28, 36 (1st Cir. 1998) (quoting Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)). Typically, an employer is not the proper defendant when the plan documents name another entity as the plan administrator or claims fiduciary. Kennard v. Unum Life Ins. Co., 2002 WL 412067, *2 (D. Me. March 14, 2002). Here, the Plan names Guardian Life as the "Claims Fiduciary with discretionary authority to determine

eligibility for [long-term disability] benefits and to construe the terms of the plan with respect to claims." GLIC- 106.  The Plan expressly states that Guardian Life decides whether a claimant is eligible for disability insurance, whether a claimant meets the requirements for payment of benefits, and what long-term benefits will be paid by the Plan. GLIC-61, 78. Guardian Life also disburses the long-term benefits. GLIC-9.

The courts have developed an exception to the rule that the plan administrator is the proper defendant in instances in which the plaintiff presents evidence that the employer, although not formally identified as the plan administrator, "controlled or influenced the administration of the plan." Beegan v. Associated Press, 43 F. Supp.2d 70, 73-74 (D. Me. 1999) (listing cases); Law v. Ernst & Young, 956 F.2d 364, 372-73 (1st Cir. 1992) ("[U]nless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits.") (quoting Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988)).  But there is no evidence in the record that Sullivan Tire controlled the administration of long-term disability benefits.  Instead, the record reflects that Sullivan Tire submitted earnings information to Guardian Life, as required by the Plan. GLIC-162, 481-82.  Although this information did not initially include the position incentive, GLIC-482, Sullivan Tire eventually explained LeBlanc's complete earnings package to Guardian Life, and left it to Guardian Life to decide whether LeBlanc's interpretation of the Plan was correct. GLIC-388.  After reviewing this information, and "based on the contract guidelines," Guardian Life concluded that LeBlanc's long-term benefits should not

13

include the position incentive. GLIC-362. Guardian Life, not Sullivan Tire, made the evaluative decision that determined LeBlanc's ultimate long-term benefits. Under the terms of the Plan, Guardian Life is responsible for disbursing long-term benefits. GLIC-9. Thus, Sullivan Tire lacks the authority to provide the typical section 1132(a)(1)(B) remedy: benefits due under the Plan.

To the extent that LeBlanc's long-term benefits claim against Sullivan Tire can be characterized as an action for equitable relief under 29 U.S.C. § 1132(a)(3), the Supreme Court's decision in Mertens v. Hewitt Associates, 508 U.S. 248 (1993), forecloses it. In Mertens, the Supreme Court read section 1132(a)(3) to authorize only remedies "that were *typically* available in equity (such as injunctions, mandamus, and restitution, but not compensatory damages.)." Id. at 256. LeBlanc's claim for larger long-term disability benefit payments is not a claim for equitable relief.

Moreover, any equitable remedy that I might issue against Sullivan Tire would not assist LeBlanc here. Although I might order Sullivan Tire to include LeBlanc's position incentive in the future figures it reports to Guardian Life, that order would not provide the relief that LeBlanc seeks, because the Plan expressly states that Guardian Life is to calculate long-term disability benefits based on the claimant's "insured earnings on record with [Guardian Life] as of the Redetermination date *immediately prior to the start of [the employee's] disability.*" GLIC-76 (emphasis added). Guardian Life "redetermines" an employee's insured earnings each time the employer reports a change in those earnings, GLIC-67, but

14

changes that are reported after the employee becomes disabled do not affect the benefit determination. GLIC-66.

Essentially, LeBlanc wants monetary damages based on Sullivan Tire's allegedly improper reporting of LeBlanc's earnings. Under Supreme Court precedent, this remedy qualifies as legal relief, which section 1132(a)(3) does not authorize. See Mertens, 508 U.S. at 257-58. See also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) ("Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.") (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1998) (Scalia, J., dissenting)). Because Sullivan Tire is not a proper defendant in an action to recover long-term disability benefits under section 1132(a)(1)(B), and because compensatory damages are not available under section 1132(a)(3), LeBlanc's claim against Sullivan Tire for long-term benefits fails.

### *(b) Short-Term Disability Benefits*

Finally, LeBlanc claims that Sullivan Tire has failed to pay him the correct amount of short-term disability benefits due under the Plan. The Plan gives Guardian Life explicit authority to determine eligibility for short-term disability benefits and to construe the terms of the short-term disability section of the Plan. GLIC-31. Inexplicably, Guardian Life's lawyers argue here that Guardian Life did not make the short-term benefit decision for LeBlanc, but the administrative

15

record belies their argument and supports Sullivan Tire's assertion that Guardian Life did exercise this discretionary role, just as the Plan language requires. The record shows email from Guardian Life to Sullivan Tire stating that Guardian Life had received LeBlanc's short-term disability claim and requesting information concerning last day worked, salary, etc. GLIC-481. It shows that Sullivan Tire provided the requested information to Guardian Life. GLIC-482-84. There is also a Guardian Life worksheet calculating LeBlanc's short-term benefits. See GLIC-456. Since Guardian Life made the short-term benefit determination (although Sullivan Tire paid the amounts as a self-insurer for the short-term plan), under Firestone the determination is entitled to deferential review. Firestone Tire and Rubber Co., 489 U.S. at 115. For the same reasons that I sustained the long-term disability benefit calculation, Guardian Life's decision to calculate short-term disability benefits based on LeBlanc's $800 weekly base salary was reasonable and supported by substantial evidence.[7]

## CONCLUSION

Sullivan Tire's and Guardian Life's motions are **GRANTED**. LeBlanc's motion is **DENIED**. The Clerk shall enter judgment for the defendants.

---

[7]LeBlanc has not challenged Guardian Life's failure to rule separately on his challenge to short-term benefit calculations (Guardian Life's letter to LeBlanc's lawyer refers only to long-term benefits). In any event, the outcome is the same, and in all his correspondence to Guardian Life and Sullivan Tire, LeBlanc's lawyer treated the calculation decisions as identical.

16

**SO ORDERED.**

**DATED THIS 12TH DAY OF DECEMBER, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**